USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __2/8/2024__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MONIQUE T. HENDERSON,

       Plaintiff,

    -against-

SAKS & COMPANY, LLC,

       Defendant.

22-CV-9925 (AT) (BCM)

**REPORT AND RECOMMENDATION
TO THE HON. ANALISA TORRES**

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiff Monique T. Henderson, proceeding *pro se*, alleges that her former employer Saks & Company, LLC, originally sued as "Saks Fifth Avenue, Inc." (Saks), violated the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.*, and Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.*, by relegating her and other older sales associates to an out-of-the-way, inaccessible portion of the sales floor in 2018, thereby causing a decrease in earned commissions; issuing her a series of "falsified" warnings; and then terminating her employment on January 15, 2020, two days after she made an age discrimination complaint to the Saks Human Resources (HR) department. Plaintiff filed a Charge of Discrimination with the New York State Division of Human Right (DHR) and the United States Equal Employment Opportunity Commission (EEOC) on March 5, 2020, again alleging age discrimination. The EEOC made a probable cause finding on August 23, 2022, followed by a failed conciliation attempt, and issued a right-to-sue letter on September 23, 2022. Now before me for report and recommendation (*see* Dkt. 26) is defendant's motion, made pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss all of plaintiff's claims with prejudice. (Dkt. 22.)

Plaintiff has adequately pleaded an ADEA retaliation claim. However, her ADEA discrimination claims are either untimely or – to the extent based on conduct that took place within the 300-day period preceding her Charge of Discrimination – too vaguely pleaded to survive

defendant's motion. Moreover, plaintiff has failed entirely to plead any Title VII claim. Consequently, defendant's motion should be granted in part and denied in part. Plaintiff's Title VII claims should be dismissed with prejudice. Her ADEA discrimination claims should be dismissed with leave to amend. As to plaintiff's ADEA retaliation claim, the motion should be denied.

## I.      BACKGROUND

### A.      Procedural History

On November 21, 2022, plaintiff filed her Complaint (Compl.) (Dkt. 2), using a form designed for *pro se* employment discrimination cases, and a request to proceed *in forma pauperis* (IFP) (Dkt. 1), which was granted the next day. (Dkt. 4.)

In her Complaint, plaintiff checked boxes to indicate that her claims are brought under both the ADEA, which bars employment discrimination based on age, and Title VII, which bars employment discrimination based on race, color, religion, sex, or national origin. Compl. at 3-4. However, there are no factual allegations in (or attached to) the Complaint related to discrimination on any basis other than age. As discussed in more detail below, plaintiff does allege that she and other older employees were discriminated against on that basis, and that she was retaliated against for raising her age discrimination claims. As attachments to her Complaint, plaintiff submitted her administrative Charge of Discrimination (EEOC Charge) (Dkt. 2) at ECF pp. 16-17; the EEOC's Determination (EEOC Det.) (*id*. at ECF pp. 10-11); and the EEOC's Conciliation Failure and Notice of Rights (EEOC Not. of Rights) (*id*. at ECF pp. 12-15).

On March 31, 2023, defendant executed a waiver of service and appeared through counsel (Dkts. 19, 20), and on May 30, 2023, it filed its motion to dismiss. Defendant argues (i) that "the vast majority of Plaintiff's claims are time-barred, as they are predicated on acts alleged to have taken place more than 300 days before she filed an EEOC charge on March 5, 2020," and (ii) that to the extent plaintiff's claims are not untimely, they "require dismissal as the facts pled are

insufficient to allow the Court to draw a reasonable inference that Defendant is liable for the alleged conduct." (Dkt 23 at 1.)

On July 25, 2023, after obtaining two extensions of her time to oppose the motion to dismiss (*see* Dkts. 28, 30), plaintiff filed a one-sentence response, reading: "I object to the illegal Saks motion to dismiss my case." (Dkt. 31.) On August 8, 2023, defendant filed a reply brief, arguing that in light of plaintiff's failure to address its arguments substantively, "the Court should exercise its discretion to deem Plaintiff's claims abandoned" and grant the motion on that basis. (Dkt. 32 at 2.) Thereafter, plaintiff filed a series of letters to the Court, some of which expand on the allegations made in the Complaint and its attachments. *See, e.g.*, Pl. 8/21/23 Ltr. (Dkt. 33) at 1 (alleging that she was given her last two written warnings in November 2019, less than 300 days before she filed her EEOC Charge).

On October 25, 2023, plaintiff requested a mediation referral (Dkt. 37), and on November 2, 2023, I referred the case to the Court-annexed Mediation Program and requested that the Clerk of Court locate *pro bono* counsel to represent plaintiff at the mediation (Dkt. 42), which has not yet taken place.

### B.      Facts Alleged by Plaintiff

Plaintiff was born in 1963. Compl. at ECF p. 4. She worked as a sales associate in the Sunglasses Department at Saks in New York City from October 2015 until her discharge on January 15, 2020, at age 56. EEOC Charge at ECF p. 16. She alleges that "in May 2018 and January 2019," she, "along with five other employees between the ages of 50 and 70 years old[,] were singled out by the employer and were placed to work in an isolated, distant area in the back of the employer's store, that was surrounded by construction which in turn created noise and dust that deterred customers from visiting." *Id.* at ECF p. 6; *see also id.* at ECF p. 8 (the area to which plaintiff was assigned had "no entrances or exits for the customers"); EEOC Charge at ECF p. 16

(the older workers were "not allowed to step out of our individual sales zone[s]," whereas "younger workers were allowed to move freely around").

As a result of her unfavorable placement, plaintiff's commission-based compensation decreased from $60,000 per year to $25,000 per year or less. Compl. at ECF p. 8; EEOC Charge at ECF p. 17 ("our commissions dried up"). Plaintiff's supervisor, Ms. Kottler, "created a pattern of promoting younger employees for their transfers to the best departments where they received better commissions and worked in a much better environment while I and other elderly employees must cover their positions within the Accessories Department." Compl. at ECF p. 6. In addition, "management and the Human Resources officials," including Mr. Garcia, "established the practice of harassing the elderly employees on the selling floor and in their offices and giving them warnings for ridiculous reasons." *Id.* at 6. This continued throughout 2018 and 2019. Pl. 8/21/23 Ltr. at 1. Plaintiff's requests to be transferred away from Ms. Kottler's supervision "because of her discriminatory conduct towards me" were never granted. EEOC Charge at ECF p. 17.

Plaintiff alleges, somewhat opaquely, that "management issued falsified warnings while I had the age discrimination lawsuit pending at the Supreme Court." Compl. at ECF p. 5.[1] More concretely, she alleges that she was given a written warning on November 4, 2019, and a final written warning on November 8, 2019, for "unprofessional conduct." Pl. 8/21/23 Ltr. at 1; *see also* EEOC Charge at ECF p. 17 ("in November 2019 I was placed on a warning and then a separate and final warning stemming from a complaint about commission fraud"). A younger colleague, who also "complained about this issue," was not disciplined. EEOC Charge at ECF p. 17.

---

[1] The website of the New York State Unified Court System reflects that *Henderson v. Saks 5th Avenue, Inc.*, Index No. 101087/2019, was closed on February 5, 2020. Other than the brief reference in plaintiff's Complaint, neither party has provided this Court with any information about the state court case.

4

On January 13, 2020, plaintiff "had a meeting with Ms. Sherry Draper, Director of Saks Human Re[s]ources, with my Complaint on the age discrimination issue." Pl. 8/21/23 Ltr. at 1; *see also* EEOC Charge at ECF p. 17 ("we went to HR and talked to Sherry Draper who informed us that she would follow up our complaint"). Two days later, on January 15, 2020, plaintiff was fired. Pl. 8/21/23 Ltr. at 1; EEOC Charge at ECF p. 17. The email she received from Saks stated that her employment was terminated due to customer complaints and insubordination, but these allegations were "false and untrue." Compl. at ECF p. 6.

On March 5, 2020, plaintiff filed her EEOC Charge, alleging discrimination and retaliation under the ADEA. EEOC Charge at ECF p. 16. On August 23, 2022, the EEOC informed plaintiff that it had found "probable cause that Respondent acted with discriminatory animus against the Charging Party and other similarly situated older employees," and invited the parties "to join with it in reaching a just resolution of the matter" through "informal methods of conciliation." EEOC Det. at ECF pp. 10-11.[2] On September 23, 2022, the EEOC informed plaintiff that it "could not obtain a settlement with the Respondent" and was "clos[ing] its file in this case," but that she could sue Saks herself. EEOC Not. of Rights at ECF p. 12. This action followed.

## II.    LEGAL STANDARDS

Fed. R. Civ. P. 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." If that "short and plain statement" fails to present "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

---

[2] The EEOC Determination suggests that at some point during the administrative proceedings Henderson also asserted a claim of race discrimination. *See* EEOC Det. at ECF p. 10. However, neither party has submitted any charge or amended charge containing allegations of race discrimination, and the EEOC appears to have found probable cause only as to age. *Id*. at ECF p. 11 ("There is reasonable cause to believe that Respondent has discriminated and retaliated against Charging Party and a class of similarly situated older workers on account of age.").

face," the deficient claims may be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

When faced with a motion made pursuant to Rule 12(b)(6), the court must "accept as true all factual statements alleged" and "draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, those factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (internal citations omitted) (quoting *Twombly*, 550 U.S. at 555, 557). The courts will not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.

In addition to the facts alleged in the complaint itself, a court faced with a Rule 12(b)(6) motion may consider "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)). Consequently, I have considered, for purposes of the pending motion, the factual allegations that plaintiff made to the EEOC. *See Hausdorf v. NYC Dep't of Educ.*, 2018 WL 1871945, at *4 (S.D.N.Y. Jan. 25, 2018) ("The May 23, 2016 complaint

6

that Plaintiff filed with the [DHR] is attached as an exhibit to his complaint in this case and thus constitutes part of his complaint for purposes of the motion to dismiss."), *report and recommendation adopted sub nom. Hausdorf v. New York City Dep't of Educ.*, 2018 WL 895657 (S.D.N.Y. Feb. 14, 2018); *see also Mikolaenko v. New York Univ.*, 2017 WL 4174928, at *2 n.4 (S.D.N.Y. Sept. 7, 2017).

In light of plaintiff's *pro se* status, I have also considered the allegations in her various letters to the Court, to the extent they do not contradict statements made in the Complaint itself. *See George v. Pathways to Hous., Inc.*, 2012 WL 2512964, at *6 n.7 (S.D.N.Y. June 29, 2012) (factual allegations made in a *pro se* plaintiff's opposition papers, or the attachments thereto, may be considered "as supplementing the Complaint, at least to the extent they are consistent with the allegations in the Complaint"); *see also Scott v. Warden & Adm'r of Jurisdiction Correction Dep't & Med. Dep't*, 2010 WL 3785252, at *4 (S.D.N.Y. Aug. 23, 2010).

Where, as here, the plaintiff is *pro se*, the court must construe her complaint "liberally and interpret it 'to raise the strongest arguments that [it] suggest[s],'" *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Harris v. City of N.Y.*, 607 F.3d 18, 24 (2d Cir. 2010)), even when "deciding an unopposed motion to dismiss." *Burns v. Fischer*, 2014 WL 1413170, at *2 (N.D.N.Y. Apr. 11, 2014); *see also Haas v. Com. Bank*, 497 F. Supp. 2d 563, 564 (S.D.N.Y. 2007) (in a *pro se* case, "failure to oppose a 12(b)(6) motion cannot itself justify dismissal of a complaint"). I therefore decline defendant's invitation to grant the instant motion based on the brevity of plaintiff's opposition. "However, even for a *pro se* plaintiff, 'conclusory allegations masquerading as factual conclusions [ ] are insufficient to defeat a motion to dismiss.'" *Glascoe v. Solomon*, 2020 WL 1272120, at *4 (S.D.N.Y. Mar. 17, 2020) (Torres, J.) (quoting *Jackson v. Cty. of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011)). Although a court is "obligated to draw the most favorable inferences

that [a *pro se* plaintiff's] complaint supports," it "cannot invent factual allegations that [s]he has not pled." *Chavis*, 618 F.3d at 170.

The Second Circuit has cautioned against dismissing a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted); *see also Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) ("Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim."). Where amendment would be futile, however, leave should be denied. *Jackson v. Wells Fargo Home Mortg.*, 811 F. App'x 27, 30 (2d Cir. 2020) (summary order).

## III.    DISCUSSION

### A.    Statute of Limitations

In New York, "[p]laintiffs asserting claims under Title VII [or] the ADEA . . . must first file a complaint with the Equal Employment Opportunity Commission or an equivalent state agency within 300 days of the allegedly discriminatory action." *Gindi v. N.Y.C Dep't. of Educ.*, 786 F. App'x 280, 282 (2d Cir. 2019); *see also* 29 U.S.C. § 626(d)(1)(B) (ADEA); 42 U.S.C. § 2000e-5(e)(1) (Title VII). Failure to comply with the 300-day time limit "give[s] rise to an affirmative defense," *Lizarraga v. Cent. Parking, Inc. - Waldorf Astoria Hotel*, 2014 WL 2453303, at *2 (S.D.N.Y. June 2, 2014), and is "grounds for dismissal." *McFarland v. Metro-N. Commuter R.R.*, 993 F. Supp. 210, 211 (S.D.N.Y. 1998). If the limitations defense "appears on the face of the complaint," or from documents attached to the complaint, the untimely claims may be dismissed pursuant to Rule 12(b)(6). *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998).

"[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing

charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). "Failure to promote, refusal to rehire, termination, job reassignments, and unsatisfactory performance reviews are discrete acts that constitute separate actionable employment practices," each of which must be challenged, if at all, within 300 days. *Hausdorf*, 2018 WL 1871945, at *5; *see also Zoulas v. New York City Dep't of Educ.*, 400 F. Supp. 3d 25, 50 (S.D.N.Y. 2019) ("Examples of discrete acts . . . include disparate disciplining, negative performance reviews, termination, failure to promote, and denial of a preferred job position"); *Gutierrez v. City of New York*, 756 F. Supp. 2d 491, 500 (S.D.N.Y. 2010) ("[F]ailure to promote, denial of transfer, and job reassignments are discrete acts[.]"); *Early v. Wyeth Pharms., Inc.*, 603 F. Supp. 2d 556, 572 (S.D.N.Y. 2009) ("verbal and written warnings, suspensions and [discriminatory] work assignments" are discrete acts subject to 300-day limitations period).

Under the "continuing violation" doctrine, which was sharply circumscribed by *Morgan*, a plaintiff may bring claims based on discriminatory acts predating the 300-day charging period only if she can "show that the related acts were the result of a discriminatory policy rather than isolated instances of discrimination." *Pearson v. Board of Educ.*, 499 F. Supp. 2d 575, 590 (S.D.N.Y. 2007). "The purpose of this doctrine is to allow the inclusion of actions whose discriminatory character was not apparent at the time they occurred." *Warren v. North Shore Univ. Hosp. at Forest Hills*, 2006 WL 2844259, at *5 (E.D.N.Y. Sept. 29, 2006). In practice, since *Morgan*, "the continuing-violation rule applies only to claims amounting to assertions of hostile-work environment or similar claims that 'cannot be said to occur on any particular day' but rather are the product of events that take place 'over a series of days or perhaps years.'" *Mohamed v. NYU*, 2015 WL 3387218, at *15 (S.D.N.Y. May 21, 2015) (quoting *Morgan*, 536 U.S. at 115), *report and recommendation adopted,* 2015 WL 5307391 (S.D.N.Y. Sept. 10, 2015); *accord Bernstein v. New*

*York City Dep't of Educ.*, 2020 WL 6564809, at *5 (S.D.N.Y. Nov. 9, 2020) ("Were it otherwise a school or an employer could not issue a negative evaluation or a disciplinary letter against a teacher or employee without fear that doing so – however merited the decision might be – would have the effect of reviving as an independent actionable claim every disciplinary letter issued in the past no matter how ancient.").

Here, because plaintiff filed her EEOC Charge on March 5, 2020, all of her claims based on discrete acts by defendant prior to May 10, 2019, are time-barred. Her allegations that Saks transferred her (and other employees "between the ages of 50 and 70") her to "an isolated, distant area in the back of the employer's store" in May 2018 and January 2019, Compl. at ECF p. 6, describe discrete acts of alleged age discrimination that occurred more than 300 days before she filed her EEOC Charge, and thus cannot be redressed in this Court. Nor can she rescue these claims by alleging that she experienced the resulting loss of commission income into "2019 and 2020," *id*. at ECF p. 8, because "a plaintiff cannot assert that there has been a continuing violation 'merely because the claimant continues to feel the effects of a time-barred discriminatory act.'" *Bernstein*, 2020 WL 6564809, at *5 (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)). The same is true with regard to plaintiff's allegations that she was "turned down for promotions (the transfers) that were given to younger workers," Compl. at 8, and that the "elderly employees" were given "warnings for ridiculous reasons." *Id.* With the exception of the two warnings she was given in November 2019, plaintiff does not specify when these acts occurred. Because they were discrete acts, however, they are beyond the reach of the ADEA (or Title VII) unless they occurred after May 10, 2019.[3]

---

[3] Plaintiff's hostile work environment allegations – which could, in theory, allow her to seek damages for conduct occurring more than 300 days prior to her EEOC Charge – are discussed in Part III(C), below.

### B.    ADEA

#### 1.    Disparate Treatment

The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age," 29 U.S.C. § 623(a), provided that the individual is at least 40 years of age. *Id.* § 631(a). "To survive a Rule 12(b)(6) motion to dismiss, a plaintiff asserting an employment discrimination complaint under the ADEA must plausibly allege that adverse action was taken against her by her employer, and that her age was the 'but-for' cause of the adverse action." *Marcus v. Leviton Mfg. Co., Inc.*, 661 F. App'x 29, 31-32 (2d Cir. 2016) (citation omitted); *see also Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 303 (2d Cir. 2021) ("[T]o establish age discrimination under the ADEA, 'a plaintiff must prove that age was the "but-for" cause of the employer's adverse decision.'") (quoting *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 174 (2009)).

The "but-for" causation standard "applies not only at trial but at the pleading stage as well." *Lively*, 6 F.4th at 303 (citing *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, ⎯⎯ U.S. ⎯⎯, 140 S. Ct. 1009, 1014 (2020)). Thus, in order to defeat a motion to dismiss, "an ADEA plaintiff must plausibly allege that [she] would not have been terminated but for [her] age." *Id.* She may do this either "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (quoting *Littlejohn v. City of New York,* 795 F.3d 297, 310 (2d Cir. 2015)). In accordance with *Iqbal*, however, she must "supply sufficient factual material, and not just legal conclusions, to push the misconduct alleged in the pleading beyond the realm of the 'conceivable' to the 'plausible.'" *Marcus*, 661 F. App'x at 31; *accord Vega*, 801 F.3d at 84 (citing *Iqbal*, 556 U.S. at 678).

11

Here, plaintiff successfully alleges that she belongs to the age group protected by the ADEA, and that she experienced at least one adverse employment action within the relevant time period – the termination of her employment.[4] Hence, as in *Marcus*, "the only question before the Court is whether [plaintiff has] pled sufficient facts to plausibly support a minimal inference of 'but-for' causality" between her age and the adverse employment actions of which she complains. 661 F. App'x at 32. I conclude that she has not.

Although plaintiff claims in broad and general terms that younger employees received better placement, better treatment, and lighter discipline than she and her older colleagues did, she does not identify a single one of the relevant colleagues – older or younger. Nor does she allege any facts to show – as required – that "she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). For example, plaintiff alleges that she was given a "final warning" related to "a complaint about commission fraud," and that a younger colleague "also complained about this issue but was never placed on warning of any kind." EEOC Charge at ECF p. 17. However, plaintiff does not identify this colleague, does not disclose the colleague's age, position, seniority, or disciplinary record at Saks, and does not provide any facts concerning the underlying incidents, other than that they both involved "commission fraud." *Id*. Without factual support, these

---

[4] Plaintiff's "final warning," to the extent it constituted a concrete disciplinary step akin to being placed on probation, may also constitute an adverse employment for ADEA purposes. However, her allegations that her supervisor "harassed" her "by regularly asking [her] if [she] met [her] numbers," EEOC Charge at ECF p. 17, by directing her to contact ten customers per week by phone, *id*., and by issuing "warnings for ridiculous reasons," Compl. at ECF p. 6, do not rise to the level of actionable adverse employment action. *See Davis v. Goodwill Indus. Of Greater New York & New Jersey, Inc.*, 2017 WL 1194686, at *7 (S.D.N.Y. June 29, 2017) ("[R]eprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation.") (quoting *Honey v. Cnty. of Rockland*, 200 F. Supp. 2d 311, 320 (S.D.N.Y. 2002)).

allegations do not "give rise to even a minimal inference of age discrimination." *Marcus*, 661 F. App'x at 32 (affirming dismissal of ADEA claim where plaintiff alleged that he was fired for conduct that was tolerated in younger employees, but failed to provide "any information as to whether these employees were otherwise similarly situated or the specifics of their conduct"); *see also Santana v. Mount Vernon City Sch. Dist./Bd. of Educ.*, 2023 WL 2876653, at *10-11 (S.D.N.Y. Apr. 7, 2023) (dismissing ADEA claim with prejudice where plaintiff alleged that "younger teachers received more favorable reviews and assignments" but only identified one comparator, and provided "no information as to his comparator's age and their respective qualifications"); *Lopez v. New York City Dep't of Ed.*, 2019 WL 2647994, at *3 (S.D.N.Y. July 26, 2019) (dismissing where plaintiff failed to "provide any specifics that indicate how he and [a younger colleague] were similarly situated").[5]

Similarly, although plaintiff alleges that the explanation Saks provided for her termination – customer complaints and insubordination – was "false and untrue," Compl. at ECF p. 6, she does not present any facts that might render her conclusory claim of pretext "plausible." *See Lively*, 6 F.4th at 307 (plaintiff's "conclusory narrative that the sexual harassment allegation [against him] 'was nothing more than a pretext to fire him for being an older worker'" was "implausible" in the absence of factual support); *Lee v. Bronx Care Hosp.*, 2023 WL 4847429, at *3 (S.D.N.Y. July 27, 2023) (dismissing where plaintiff failed to allege any "facts suggesting that BronxCare's proffered

---

[5] Plaintiff also alleges that in 2021 – a year after her own termination – at least seven of her former colleagues, "all of them over 55 years of age or older, were fired and most of them were replaced by the younger employees." Compl. at ECF p. 6. Once again, however, she does not identify any of the terminated employees, or any of their replacements, and provides no facts whatsoever concerning the circumstances of the terminations or the respective qualifications of the employees involved. Thus, even assuming, *arguendo*, that plaintiff could rely on events that took place long after her own departure to show that she was a victim of age discrimination, her vague allegations concerning the events of 2021 could not "nudge[] [her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

reason for his firing Plaintiff was a pretext"); *Soto v. Marist Coll.*, 2019 WL 2371713, at *6 (S.D.N.Y. June 5, 2019) (dismissing race discrimination claim where the Amended Complaint "specifically identifies Defendants' stated reason for firing Plaintiff" but "pleads no facts explaining why that reason was pretextual"). Nor does she identify a single statement or comment, by anyone at Saks, that would suggest that the real motivation for her termination was her age. Instead, she has filed a "skeletal pleading" which "provides no more than 'naked assertions devoid of further factual enhancement' and does not allow the court to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Marcus*, 661 F. App'x at 32 (quoting *Iqbal*, 556 U.S. at 678).

### 2.     Hostile Work Environment

A hostile work environment is one that is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Forgione v. City of New York*, 2012 WL 4049832, at *7 (E.D.N.Y. Sept. 13, 2012) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "To establish a hostile work environment claim under the ADEA, a plaintiff must allege facts that the complained of conduct: '(1) is objectively severe or pervasive – that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected characteristic].'" *Brown v. New York City Dep't of Ed.*, 2021 WL 4943490, at *11 (S.D.N.Y. Aug. 31, 2021) (alteration in original) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)), *report and recommendation adopted*, 2021 WL 4296379 (S.D.N.Y. Sept. 20, 2021). Incidents "must be sufficiently continuous and concerted in order to be deemed pervasive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002). Accordingly, a court analyzing a hostile work environment claim must assess "the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

Here, as noted above, plaintiff's allegation that she and other ADEA-protected workers were "singled out by the employer and were placed to work in an isolated, distant area in the back of the employer's store, that was surrounded by construction which in turn created noise and dust," Compl. at ECF p. 6, describes a discrete act (or acts) which occurred outside of the applicable limitations period, in "May 2018 and in January 2019." *Id*. Her further allegations that the "elderly employees" were "harass[ed] . . . on the selling floor and in their offices" and given "warnings for ridiculous reasons," *id*., fall well short of pleading a hostile work environment claim. At best, these allegations show that plaintiff subjectively found the work environment to be unpleasant. However, she pleads no facts that would enable the Court to determine that the conduct of which she complains was so "objectively severe or pervasive," that any "reasonable person" would find the environment "hostile or abusive." *Brown*, 2021 WL 4943490, at *11. Indeed, the only concrete examples that plaintiff provides concerning the harassment she experienced are in her EEOC Charge, which alleges that Ms. Kottler harassed her by asking if she had met her numbers and by directing her to make sales calls. EEOC Charge at ECF p. 17. These allegations simply do not make out a hostile work environment claim. *See Plahutnik v. Daikin Am., Inc.*, 912 F. Supp. 2d 96, 106 (S.D.N.Y. 2012) ("[E]xcessive criticism is generally insufficient to support a claim of a pervasive or severe hostile work environment."); *Trachtenberg v. Dep't of Educ. of City of New York*, 937 F. Supp. 2d 460, 472-73 (S.D.N.Y. 2013) (finding that allegations of excessive scrutiny, intimidation, negative performance evaluations containing "scurrilous charges," being moved to a "poorly ventilated, windowless office," and being refused training opportunities fell "well short of

15

the conduct that courts have found 'sufficient pervasive to alter the conditions of the victim's employment'") (citation omitted). Thus, plaintiff fails to plead an ADEA claim based on a hostile work environment.

### 3.    Retaliation

The ADEA makes it "unlawful for an employer to discriminate against any of [its] employees . . . because such individual . . . has opposed any practice made unlawful by [§ 623 of the ADEA]." 29 U.S.C. § 623(d). To state a retaliation claim under the ADEA, "a plaintiff must show (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Lively*, 6 F.4th at 303 n.6 (quoting *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012)). As with other claims under the ADEA, retaliation claims require a showing that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013); *see also Lively*, 6 F.4th at 304 (holding that, as to ADEA retaliation claims, "the but-for causation standard applies at the pleading stage").

Plaintiff has successfully pleaded a retaliation claim. She alleges that she participated in a protected activity, of which defendant was necessarily aware, when she made a "formal complaint" to Draper, in the Saks HR department, on January 13, 2020, "[b]ecause of the age discrimination [she] was experiencing." EEOC Charge at ECF p. 17; *see also* Pl. 8/21/23 Ltr. at ECF p. 1 (plaintiff met with Draper "on the age discrimination issue"). Internal complaints to the employer's HR department (even if "informal") can "provide the basis for a retaliation claim," *Mandel v. Champion Intern. Corp.*, 361 F. Supp. 2d 320, 325 (S.D.N.Y. 2005), as long as an employer "understood, or could reasonably have understood, that the plaintiff's [complaint] was directed at

conduct prohibited by Title VII [or the ADEA]." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998).

Further, plaintiff alleges that she experienced an adverse employment action when she was terminated two days later. *See* Compl. at ECF p. 17. Even though plaintiff has not offered any factual detail to support her claim that the reasons she was given at the time were "false and untrue," *id.* at ECF p. 6, the close temporal proximity between the complaint and the termination is sufficient, at the pleading stage, to show "a causal connection between the protected activity and the adverse employment action." *Lively*, 6 F.4th at 303 n.6. "In this Circuit, a plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by 'showing that the protected activity was closely followed in time by the adverse [employment] action.'" *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001) (alteration in original) (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)). "[T]he Supreme Court has suggested that 'the temporal proximity must be "very close,"'" *Riddle v. Citigroup*, 640 F. App'x 77, 79 (2d Cir. 2016) (summary order) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)), but the two-day period alleged here comfortably meets that standard. *See, e.g.*, *Littlejohn*, 795 F.3d at 319-320 ("Littlejohn's allegations that the demotion occurred within days after her complaints of discrimination are sufficient to plausibly support an indirect inference of causation."). Consequently, plaintiff has adequately alleged an ADEA retaliation claim arising from the termination of her employment on January 15, 2020.[6]

---

[6] However, plaintiff's one-sentence claim that "management issued falsified warnings while I had the age discrimination lawsuit pending at the Supreme Court," Compl. at ECF p. 5, does not plausibly allege any actionable retaliation. "Warnings" of possible future discipline, in most cases, do not rise to the level of adverse employment actions. *See Bernstein*, 2020 WL 6564809, at *6 (the "mere threat of employment action that is not ultimately realized cannot constitute an adverse action"). Moreover, it is unclear from the Complaint when the warnings were given (in relation to the filing of her state court case), what they were for, and what about them was "falsified."

### C.    Title VII

Under Title VII, it is unlawful for a covered employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Here, although plaintiff checked the "Title VII" box, *see* Compl. at 3, she does not specify whether she alleges discrimination on the basis of "race, color, religion, sex, or national origin," *id*., and the Complaint contains no factual allegations suggesting that that she was discriminated against on the basis of any of these characteristics. Moreover, plaintiff makes no showing that that she asserted a Title VII claim before the EEOC prior to filing suit, which is "a precondition to filing a Title VII claim in federal court." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018).[7] Consequently, plaintiff's Title VII claim should be dismissed.

### IV.    CONCLUSION

For the reasons set forth above, I recommend, respectfully, that defendant's motion to dismiss the Complaint be GRANTED IN PART and DENIED IN PART. All of plaintiff's claims, except for her ADEA retaliation claim, should be DISMISSED. Because she has provided no hint that she could plead a claim for discrimination based on race, color, religion, sex, or national origin, her Title VII claim should be dismissed WITH PREJUDICE. However, it is possible that she

---

[7] Title VII exhaustion, like the statute of limitations, "operates as an affirmative defense," which ordinarily must be raised and proved by the defendant. *Hardaway*, 879 F.3d 491. In this case, however, plaintiff's EEOC Charge – which alleges only age discrimination and retaliation – is attached to her Complaint, making her failure to exhaust her Title VII claim a proper basis for dismissal pursuant to Rule 12(b)(6). *See Quinones v. New York City*, 2020 WL 5665142, at *4 (S.D.N.Y. Aug. 17, 2020) ("an affirmative defense of a failure to exhaust can be raised on a Rule 12(b)(6) motion, where non-exhaustion is clear from the face of the plaintiff's complaint, or from documents attached thereto or incorporated therein"), *report and recommendation adopted,* 2020 WL 6901340 (S.D.N.Y. Nov. 23, 2020).

could, with additional detail, plead either a disparate treatment claim under the ADEA (arising from discrete discriminatory acts after May 10, 2019) or a hostile work environment claim under the ADEA. Consequently, those claims should be dismissed WITHOUT PREJUDICE, and plaintiff should be granted leave to replead them within 14 days after the Court's decision on the motion.

Dated: New York, New York
       February 8, 2024

**BARBARA MOSES**
**United States Magistrate Judge**

## NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have 14 days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). *See also* Fed. R. Civ. P. 6(a) and (d). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Analisa Torres, United States District Judge, at 500 Pearl St., New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Torres. **Failure to file timely objections will result in a waiver of such objections and will preclude appellate review.** *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018) (summary order); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

19